v. Commissioner of the IRS All right, that's all set. Mr. Siegel, you have reserved two minutes for rebuttal, so that gives you eight minutes to start. Don't presume we're going to give you 20 extra. Generally, if the judges have questions, then the thought is we'll be flexible, but we ordinarily try to stick pretty close to these. But you may proceed. Good morning, Your Honors, and may it please the Court. My name is Peter Siegel. I represent the six petitioners in these consolidated cases. These are straightforward statutory cases with a clear textual result. Under Section 6330C1 of the Internal Revenue Code, in a collection due process proceeding, any collection due process proceeding, the commissioner and appeals officer are required to verify that the requirements of any applicable law or administrative procedure have been met. That's at 6330? That's at 6330. The commissioner agrees, and the tax court has long held, that the supervisory approval requirement of Section 6751 is among the requirements of, quote, any applicable law. And it's undisputed that no verification of supervisory approval occurred here. But just so I'm clear, your view is that the 6751 approval could have been overlooked. There could be basically a decision finding tax liability deficiencies and penalties. Somebody could even get to this court, have it upheld. Then you go back to a levy process, and at that point, somebody can raise for the first time a 6751 deficiency. No, Your Honor. And this may sound like a technicality in response to the question, but I just want to make sure that we're on the same page. Under 6330, nobody has to raise the supervisory approval requirement. There is an independent obligation on the commissioner and the appeals officer to verify that Section 6751 was broken. That independent statutory obligation clearly applies under the clear text of the statute. So if they don't do that, then the taxpayer, the natural response is, you didn't provide verification. And so that's the argument the taxpayer would be making in that circumstance. But it's not that you didn't provide supervisory approval in the first instance. It's that you didn't provide verification. And verification, as you noted, comes from an entirely different statutory provision that doesn't contain any exception of the kind that the commissioner is arguing for here. And turning to those two arguments that the commissioner makes... But focusing on the verification requirement, if one had a suspicion or you chose not to inquire for a while about supervisory approval, and then in a last-ditch effort to avoid levies and liens, you put the verification requirement to its test. You're kind of in a back doorway raising the supervisory approval requirement, which I think is part of what Judge Sullivan was kind of aiming at. So that can be raised, and your position is that the verification requirement is absolute, and it bears on whether the supervisory approval occurred or not. And that can be raised under 6330 before levy. Short answer, yes, Your Honor. There's one section, 6330, there's one verification requirement. There are not verification requirements for cases in which the taxpayer previously litigated the applicability of the penalties, and then separate verification requirements for cases in which no prior litigation occurred. You don't have to have any basis for thinking that the verification requirement was incorrect if it was verified. It does trace back to the supervisory approval, which all happens before the penalties are assessed. I'm sorry, Your Honor. I'm sorry. I'm trying to separate the verification requirement from the supervisory approval requirement, but you're saying that it applies kind of no matter what has happened before. You can raise that at the levy stage where the verification occurred. Right. If that turns out that you're kind of indirectly raising the supervisory approval, then so be it, because the statute requires. Right, then so be it. And the effects are different, right? If we won in the first instance on supervisory approval in the prior litigation, then there would be no assessments remaining, right? It would have invalidated the assessments. That's not the case if we win on verification. If the commissioner fails to provide verification or the- The tax court made its ruling dependent on the fact that the tax court had already ruled that these were the amounts owing as tax and as penalty. So if that is true, if the tax court had already ruled that these were the amounts owing, what could be at issue? How could that be changed other than by a ruling of a higher court that that was error? Well, Your Honor, the effect of my clients winning this appeal would not be to change that or to set aside that prior tax court ruling. It would prevent the collection by certain means of the amounts that the tax court previously determined were owing. But it would not invalidate the determination that those amounts were in fact owed. What would lead to the disapproval or not allowing certain means to collect the tax? If the tax is due and collectible, why isn't it collectible by any lawful method? Well, so the statute, and this is Section 6330, which provides for the procedures and the collection due process proceeding, presupposes that there will be instances in which amounts are owed that cannot be collected through the means that the IRS is attempting to collect through here. There are additional procedural requirements for collecting, employing those means, and one of them is Section 6330C1's verification requirement. And if the commissioner and the appeals officer cannot satisfy that provision, then the taxes can't be collected through that means. They can still be collected through other possible means, but the particular means here have particular procedural hoops that the commissioner and the appeals officer need to jump through in. Am I right in understanding that 6751 was enacted to prevent the service from squeezing people by threatening undue penalties? Is that correct? I would agree that that was certainly part of the impetus. And so the purposes to be served by 6751 are already served by the time the penalty is finally adjudicated. Is that right? That may be right in certain instances. I'm not sure that's right across the board, Your Honor. But it's not aimed at the imposition of a lien or the method of collection. It's aimed at the amount and the assessment of all the way, Your Honor. The requirement exists, and any enforcement of the requirement, including at the back end in a collection due process proceeding where verification is required, is going to strengthen adherence to the requirement in the first instance. So if you can't collect, I don't think this is just a harmless error effectively and a technicality with respect to supervisory approval. I think that meaningfully enforcing the verification requirement with respect to supervisory approval, in fact, enforces the supervisory approval requirement as well, or at least incentivizes the IRS's adherence to the supervisory approval. I was going to say, I mean, the failure to get the approval at the 6751 stage means a penalty can't be assessed, period, right? In the first instance, if that argument is timely raised at the- I'm just saying, the effect of not getting supervisory approval under 6751 would be you can't assess a penalty. The IRS cannot assess a penalty. Yes, Your Honor. I would agree with that. I just want to agree- The consequence of a 6330 verification that is incorrect or can't be made because of this earlier footfall, if that's what it is, is that you can't levy or lean to collect the penalty. Right. It does not- You might go march into a court, get a judgment, and then try to enforce it that way, but that will limit- that will be probably harder for the IRS. It does not- I agree with you completely. It does not by itself invalidate the penalty, and that's really the core of the tax court's error in this case and the commissioner's error. The tax court believed that if verification isn't provided at the section 6330 stage, well, then that's going to set aside the earlier tax court decision determining that the penalties were appropriate. And that's simply wrong. It doesn't set aside or even call into question that decision, which is final. So just to make sure I understand your colloquy with Judge Sullivan, so because the penalty decision is final, you say the verification requirement just bears on the methods used to collect through this administrative process, but if the service came or the commissioner came into court and transformed the deficiency in assessment and penalties and so on into a judgment that they thereafter could under state law would have you impose levies and liens. Is that right? They thereafter would understate- I mean, I understood that the imposition of a lien or levy you're saying was turned on the validity of the verification and their- Yes, Your Honor. What other collection tools are available to the service if it turns out they can't get the verification? Right. This is standard judgment enforcement, and it may be- I don't want to say something today that's going to sort of prejudice any future proceedings should we get there. But with respect to this particular method of collection, which is not the only possible method of collection, and I think the commissioner will readily agree that this is not the only possible method of collection, Section 6330C1 governs and has a particular requirement that may not be present and probably is not present with respect to all other possible methods of collection that the commissioner might pursue. Okay, thank you. All right. If there are no further questions. All right, Mr. Siegel, you've got two minutes for a follow-up. We'll now hear from Mr. Bramman. Am I pronouncing that right? Yes, you are. Robert Bramman for Congress. There is something missing from the heart of this appeal. I agree there is, and I'd like to give some perspective. Congress created this remedy, the collection hearing, to help- well, really just to address collection issues. It's triggered when the IRS serves a notice of intent to levy or records a notice of federal tax lien. It's designed for taxpayers who are genuinely put in financial jeopardy by those collection avenues. You can imagine Congress thinking of a small business owner who falls behind on their taxes. They get these collection notices and they think, wait, if I can just tell the IRS to stop, if you levy my business operating account, I won't be able to pay my record a lien affecting all of my credit. I'll lose my commercial credit. I won't be able to buy inventory or raw materials or whatever. Hold off on those remedies and I will offer something else, an installment agreement or security in some other piece of property that doesn't affect his overall creditworthiness. The mismatch between that remedy and these taxpayers is they're not put in financial jeopardy. The statute says pretty emphatically the appeals officer shall obtain verification from the secretary that the requirements of any applicable law or administrative procedure have been met. That's really broad. If they didn't want it to cover certain things, they could have said so. But when they use such broad language, why do you think that the 6751 provision is not among the applicable laws and procedures? I think the tax court has held that it is. Congress took a certain shortcut in not detailing what the applicable requirements were, but the tax court, which has quite a lot of experience dealing with these kinds of things, has set forth a short list of what needs to be checked. And the supervisory approval is one of them. So why shouldn't we read it literally? How can you get around this language? Verification wasn't obtained. The 6751 was approved. It seems like a bizarre result. I'm with you on that. It seems like no way to run a railroad. But it seems to me that Congress passed this because they wanted to make sure the IRS was complying with all the various requirements. Let me talk for a moment about the different collection avenues. Are we agreed that these guys are not concerned about tax liens or levies because they're inactive corporations? Yes, we understand that. You're not suggesting that we interpret the statute to mean when we're talking about poor taxpayers or taxpayers who are financially on the edge, the statute applies to them but not to wealthy taxpayers? I agree that the statute applies the same way to taxpayers that have some property and those that have none. If the commissioner wants to then be able to exercise the full range of tools for collection, if the tax court's ruling is overturned, what can the commissioner do then to regain the opportunity to use the full range of tools of collection? Is there any way that he can backtrack and now get the certification that was absent in the first instance speedily and whatever, or is it something that can't be remedied depending on what the failure was in the past? It can't be remedied because the approval has to be given by a certain time. This court and other courts have, there's still some disagreement amongst the courts about when the approval has to be given, but it's certainly too late to approve the penalty that was assessed and litigated more than 10 years ago. So what does the commissioner need to do to get the money? Good question. My friend is right that the government could file a complaint to reduce the assessment to judgment and try to execute on the judgment. But for these taxpayers, that wouldn't work for these taxpayers because they don't have any money. They are the sort of unholy byproduct of tax sheltering transactions that were disregarded as shams. What the IRF has to do to collect from these kinds of taxpayers is find the other parties who participated in the tax sheltering transactions and build the case to assert some sort of third party liability against them as transferees or nominees, alter egos. Aren't you going to have to do that anyway then? Why do these notices of lien and levies have to, why are they important at all? You're right, they're not. The IRS sent these notices just while it was on automatic pilot. I don't think there was anyone at the IRS thinking they were really about to collect from property in these taxpayers' names. So the lien and levies are more important for revenue than the court process, the more cumbersome court process. Yes. And here's what the IRS... Why are we so worried about this? I'm sorry, I want to ask you, if these taxpayers had the money, what would you need to do? What would be the, how difficult would it be for the commissioner to then take steps to be able to get that money? The commissioner would have to ask the Department of Justice to file a complaint in district court and get a judgment. And then try to execute the judgment through a garnishment or whatever the... But that's how civil litigants do it all the time. That's how most civil litigants do stuff. They don't have the ability to levy and do liens the way the IRS does, right? Yes. So it's not impossible. It's not impossible, but it's a lot more work for the government. With respect to one, you do have a judgment, don't you? Isn't there a judgment from one of the six? Isn't there a tax court judgment? Well, there are tax court decisions against all of them, but that's not a judgment that we can enforce. It's not a judgment we can enforce. It's an assessment, and we can use the usual tools of administrative tools of the IRS. But to collect it as a judgment, we have to go to court. But we do have a relevant judgment that I didn't put in my briefs because I didn't learn about it until after the briefing was completed that I want to tell you about right now. For one of these taxpayers, what the IRS has to do is find the other participants, the transaction, and assert third-party liability. And it did as to one of these taxpayers, Humboldt-Shelby Holding Company. The IRS found a family of trusts owned by an affluent family, the Dillon Family Trusts, asserted third-party liability against them. They paid Humboldt-Shelby's liability, $80 million, and stood for a refund in court of federal claims. The matter went to 11 days of trial in court of federal claims this past year, and it entered a judgment upholding the third-party liability assertions on October 31st of this year. I'd like to give you the site if you want to look it up. But what does that have to do with the issue that we're dealing with now? It doesn't help you resolve the... So, I mean, in fact, if anything, it proves the point that to the extent that any of these folks have assets, there are other ways to collect. Yes, but if you look at the opinion, you'll get my point that, wow, this was a whole lot of work that Congress probably did not intend to impose on the government. It does seem, though, that it's not a whole lot of work to get a supervisor's approval, and so I imagine one bad opinion will make everybody do it right from here on out, and maybe that's what Congress wanted. I mean, how tough is it to get a supervisor's approval if you know that that's the price of admission to get penalties and the price of admission to get the ability to levy or put liens on assets? It's not. Congress does it all the time, but I don't think... It's not the approval. It's the certification. It's the certification. All the rights have been preserved. What we're talking about now is the... Does the appeals officer need to obtain verification that there had been supervisory approval in a case that has already been to tax court and decided in tax court? Because here there's no contention that there wasn't supervisory approval. What was missing was the verification that there had been supervisory approval. Isn't that right? That's right. The tax court has said the appeals officer does not need to get verification of prior supervisory approval if the case has already been decided or also in a related situation if there's been a closing agreement. Is it of any pertinence to us that there's no contention that there wasn't supervisory approval? I don't know that there wasn't supervisory approval. It wasn't part of the case that was litigated in the tax court. What means are available to the taxpayer to determine whether supervisory approval was obtained? If you want to make sure that... Congress wanted to protect taxpayers against abuses of threats of penalty and so on. So how can a taxpayer assure himself that supervisory approval was obtained during the course of... These proceedings have been going on for years and years and years. One might have a sandbagging concern. Nonetheless, even before we get to focusing on verification, what can the taxpayer do? Or can the taxpayer just show up at any stage of the proceedings and say, I don't think you got supervisory approval? Honestly, I do not know if there's any method by which a taxpayer can request verification. Has a supervisor approved this? I don't know if there is one. During the appeals process, there was some limited discovery. And it was in the course of that that a taxpayer could ask for access to verification materials. I mean, there is discovery that's permitted. I don't believe there's discovery in the administrative hearing. I mean, there's exchange of materials back and forth. But there's no right to propound interrogatories or anything like that. I mean, if the IRS says, yeah, everything was done according to the law and regs, and a taxpayer says, I don't think that's right, they're just out of luck. If a case hasn't been decided in the tax court, for example, there's one case in here somewhere that the IRS sent a notice of sufficiency to a taxpayer. He didn't go to tax court. He just let the time elapse and the tax was assessed against him. And then when he went to his collection hearing, he asked for verification and the IRS agreed that it had to get it. Verification, I'm sorry, verification of the supervisory approval. So in that situation, yes, the taxpayer can ask for verification of supervisory approval at a collection hearing. Were there no takers for the federal claims court decision? It's 168, fed claims 228. 228. Thank you very much, Mr. Brandman. We'll now hear from Mr. Siegel for two minutes of rebuttal. Your Honor, if there are questions, I'm happy to address them. Otherwise, I'll yield my time. I guess we'll reserve decision. Thank you both. Thank you.